# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOHN ROBERT KASTNER, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 13-CV-0138-CVE-FHM |
| ) | |
| TIM WILKERSON, Warden, ) | |
| ) | |
| Respondent. ) | |

## OPINION AND ORDER

Before the Court is the 28 U.S.C. § 2254 petition for writ of habeas corpus (Dkt. # 1) filed by Petitioner, John Robert Kastner, a state prisoner appearing pro se. Respondent filed a response (Dkt. # 10) and provided the state court records (Dkt. # 11) necessary for adjudication of Petitioner's claims. Petitioner did not file a reply. For the reasons discussed below, the petition for writ of habeas corpus shall be denied.

## *BACKGROUND*

Petitioner and Lori Kastner (Lori) had been married for over twenty years when, on the morning of June 25, 2008, Lori was shot once in the jaw while in her bed and then fatally shot in the temple at point blank range. Dkt. # 11-3, Tr. Vol. III at 570-71. Lori had worked as a law clerk to Oklahoma Supreme Court Justice Thomas Colbert (Dkt. # 11-5, Tr. Vol. V at 903), and Petitioner had worked as a teacher and coach at Daniel Webster High School, located in Tulsa, Oklahoma. Id. at 829-30. Lori and Petitioner had two biological children, Marion and Fraser, and had adopted a third, Sally. Id. at 900, 782-83. Their house was a frequent gathering place for the students and faculty of Webster High School, id. at 823, and their marriage appeared to be happy. Id. at 822-23; see Dkt. # 11-4, Tr. Vol. IV at 748, 765.

Before her death, Lori and the children had been preparing to leave Tulsa for a trip to Israel. Dkt. # 11-5, Tr. Vol. V at 785. Petitioner had told his wife, his friends, and his coworkers that he had substantial connections with the State of Israel, claiming he had dual citizenship in the United States and Israel and had previously served in the Israeli Defense Force. Id. at 809. Petitioner also stated that, while in Israel, he had heroically saved the life of a high ranking Israeli official and had been given a substantial sum of money as a reward. Id. at 809, 936. In addition, Petitioner claimed that he controlled a corporation in Israel: the 713 Corporation. Id. at 930, 785. The trip to Israel was to be a combination vacation and training trip, as Lori had recently resigned her position at the Oklahoma Supreme Court to accept a job at the 713 Corporation. Id. at 938, 788. At trial, Sally Kastner testified that Lori believed her salary while working for the 713 Corporation would be several million dollars. Id. at 789. Petitioner told the family that they would board a private plane provided by the corporation and depart for Israel on June 25, 2008. Id. at 792, 820.

Additionally, Petitioner told a co-worker that his father, who he said invented a part of a printing press, had left him a $20 million inheritance, and Petitioner promised to make sizable donations to Webster High School. Id. at 810. Petitioner specifically promised to donate a significant amount of money to the school's athletic department to update its program. Id. at 811-12. Petitioner also promised a reward of $100,000 to the coach of the football team if the football team won five games that year, and Petitioner promised another $100,000 if attendance at those games significantly increased. Id. at 818-19. Petitioner also promised to pay coaching stipends. Id. at 813. However, no transfer of funds to Webster High School or its football coaches ever took place. Id. at 812-17. Furthermore, when the members of the coaching staff attempted to have the contracts signed in the days preceding the family's departure for Israel, they were repeatedly told that Petitioner was ill and would not be able to meet with them. Id. at 816-17.

The truth was that the stories Petitioner told had been lies. There was no inheritance--Petitioner's father did not have great wealth and was still alive and in good health. Id. at 926-27. There would be no donations--the Kastner family did not have great wealth and was already $150,000 in debt. Id. at 941. There was no record of heroic service in the Israeli military--Petitioner had never been in the Israeli Defense Force, had never saved anyone while in the military, and was not a citizen of Israel. Dkt. # 11-3, Tr. Vol. III at 392. There was no private plane to take the family to Israel nor was there a job with a multi-million dollar salary waiting for Lori at the 713 Corporation--there was no 713 Corporation at all. Dkt. # 11-4, Tr. Vol. IV at 690; Dkt. # 11-3, Tr. Vol. III at 378-79.

On the morning of June 25, a few hours before the family was to travel to the airport where a private plane would not be waiting for them, Lori Kastner was fatally shot in the head. Petitioner initially told police that he awoke to see an intruder at the foot of the bed demanding money and to know the whereabouts of "Whitney," the former name of the Kastner's adopted daughter, Sally. Dkt. # 11-4, Tr. Vol. IV at 663; Dkt. # 11-5, Tr. Vol. V at 918. Petitioner claimed that he went to retrieve a bag of cash that the family had assembled for their trip when the intruder shot Lori with a gun that Petitioner had bought and placed on the dining room table beside the bag of cash. Dkt. # 11-4, Tr. Vol. IV at 665, 670. Petitioner claimed that he then struggled with the intruder and was shot in the finger before he was able to take the gun from the intruder. Id. at 666-67. Petitioner claimed that the intruder then took the money and left. Id. at 667.

During the course of the investigation, Petitioner's story about the events that transpired on the morning of June 25--from the description of the perpetrator to the sequence of events--changed several times. Id. at 734-36. Petitioner lied about when he had bought the gun used to kill Lori, id. at 734, and, although Petitioner claimed there had been a struggle with the intruder, no objects in

3

the rooms where the struggle allegedly occurred seemed to have been disturbed. Id. at 674. Petitioner claimed that, after the intruder left, he went back to the bedroom and tried to give Lori CPR, but blood flow patterns showed that Lori had not been moved from where she had fallen after being shot the second time. Dkt. # 11-5, Tr. Vol. V at 1002. Additionally, the patterns of blood spatter throughout the house contradicted Petitioner's version of the events. Id. at 952-76.

Three days after the murder, Petitioner was charged with First Degree Murder, in Tulsa County District Court, Case No. CF-2008-3074. Dkt. # 10-3 at 1. Trial by jury was held on September 13-20, 2010. Dkt. # 10-2 at 1. Attorneys Pete Silva and Jill Webb represented Petitioner. Dkt. # 10-3 at 17. The jury found Petitioner guilty and recommended that Petitioner be sentenced to life imprisonment without the possibility of parole. Id. at 1. The trial court sentenced Petitioner in accordance with the jury's recommendation. Id.

Petitioner perfected a direct appeal to the Oklahoma Court of Criminal Appeals (OCCA). Id. Represented by attorney Stuart Southerland, Petitioner raised the following propositions of error:

> Proposition 1: The overwhelming quantity of "other bad act" and "state of mind" evidence in this case impermissibly shifted the jury's attention away from the crime which appellant was charged with committing. The admission of the evidence constituted a violation of the Oklahoma Evidence Code and denied appellant the right to a fair trial guaranteed by the Fourteenth Amendment to the United States Constitution.
>
> Proposition 2: The Appellant received ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution.

(Dkt. # 10-1). In an unpublished opinion, filed March 12, 2012, in Case No. F-2010-980 (Dkt. # 10-3), the OCCA rejected each claim and affirmed the Judgment and Sentence of the district court.

On March 7, 2013, Petitioner filed his federal petition for writ of habeas corpus (Dkt. # 1). Petitioner identifies two grounds of error, as follows:

4

> Ground I: The overwhelming quantity of "other bad act" and "state of mind" evidence in this case impermissibly shifted the jury's attention away from the crime which appellant was charged with committing. The admission of the evidence constituted a violation of the Oklahoma Evidence Code and denied appellant the right to a fair trial guaranteed by the Fourteenth Amendment to the United States Constitution.
>
> Ground II: The Appellant received ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution.

Id. In response to the petition, Respondent argues Petitioner is not entitled to habeas corpus relief. Dkt. # 10 at 14.

*ANALYSIS*

**A.    Exhaustion/Evidentiary Hearing**

As a preliminary matter, the Court must determine whether Petitioner meets the exhaustion requirements of 28 U.S.C. § 2254(b), (c). See Rose v. Lundy, 455 U.S. 509, 510 (1982). Petitioner presented his claims to the OCCA on direct appeal. Therefore, the exhaustion requirement of 28 U.S.C. § 2254(b) is satisfied.

In addition, the Court finds that Petitioner is not entitled to an evidentiary hearing. See Williams v. Taylor, 529 U.S. 420 (2000).

**B.    Claims adjudicated by the OCCA**

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions. Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding." 28 U.S.C. § 2254(d); see Harrington v. Richter, 562 U.S. 86, 102-03 (2011); Williams v. Taylor, 529 U.S. 362, 385-86 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001). "[C]learly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme Court's] decisions." White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (internal quotation marks omitted) (citations omitted).

When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner. See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002). An unreasonable application by the state courts is "not merely wrong; even 'clear error' will not suffice." White, 134 S. Ct. at 1702 (citing Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003)). The petitioner "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. (quoting Richter, 562 U.S. at 103) (internal quotation marks omitted); see Metrish v. Lancaster, 133 S. Ct. 1781, 1787 (2013).

Generally, a federal habeas court has no authority to review a state court's interpretation or application of its own state laws. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (emphasizing that it is not the province of a federal habeas court to reexamine state court determinations on state law questions). When conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. Id. at 68 (citing 28 U.S.C. § 2241; Rose v. Hodges, 423 U.S. 19, 21 (1975)).

In this case, Petitioner presented his habeas claims to the OCCA on direct appeal. Because the OCCA addressed Grounds I and II on the merits, the § 2254(d) standard applies to this Court's analysis of those grounds.

6

**1. Admission of improper and prejudicial evidence (Ground I)**

In Ground I, Petitioner claims the improper admission of an "overwhelming quantity of 'other bad act' and 'state of mind' evidence" at his trial violated his Fourteenth Amendment right to a fair trial by "impermissibly shift[ing] the jury's attention away from the crime which [Petitioner] was charged with committing." Dkt. # 1 at 5. Petitioner identifies six witnesses whose testimony contained what Petitioner alleges was inadmissible evidence elicited by the prosecution for the purpose of painting Petitioner as a 'bad' man and a liar: Tom Colbert, Oklahoma Supreme Court Justice; Herman Moon, Lori's father; James Harper, Petitioner's co-worker; Phillip Garland, former principal of Webster High School; Melanie Merchant, Lori's best friend; and Joyce Kastner, Petitioner's step-mother. Id. at 14, 19-21, 23-24. Petitioner alleges that much of the testimony given by those six witnesses was highly prejudicial to Petitioner, while being only slightly relevant or not relevant at all. See id. at 14-31. Petitioner further alleges that the testimony was offered for the purpose of swaying the emotions of the jury. Id. at 23-24.

On appeal, the OCCA evaluated this claim under a plain error standard of review because Petitioner's counsel failed to object contemporaneously at trial. Dkt. # 10-3 at 12. The court found as follows:

> Evidence that a defendant has committed other crimes, wrongs, or bad acts is admissible to show motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. 12 O.S.2001, § 2404(B); *Andrew v. State,* 2007 OK CR 23, ¶ 41, 164 P.3d 176, 190. We find that the evidence of Appellant's pattern of deceptions was highly relevant to his motive for the decision to kill his wife in the early morning hours of June 25, 2008. Though Appellant had nothing to gain financially from Lori's death, the imminent discovery of his monumental deceptions, and the catastrophic consequences likely to ensue for him personally, apparently were more than he was willing to bear. The evidence tended to establish that Appellant murdered his wife and hastily concocted a home invasion story, rather than face the discovery and devastating personal and professional fallout from his lies. The evidence tending to show Lori Kastner's unsuspecting state of mind was probative of the consequences for Appellant whenever Lori finally discovered that

7

> his fabrications had cost her a good legal job and financially imperiled her and her children. Relevant evidence need not conclusively, or even directly, establish the defendant's guilt. *Dodd v. State,* 2004 OK CR 31, ¶ 38, 100 P.3d 1017, 1032. "Any legal evidence from which the jury may adduce the guilt or innocence of the defendant is admissible if, when taken with other evidence in the case, it tends to establish a material fact in issue." *Ashlock v. State,* 1983 OK CR 134, ¶ 7, 669 P.2d 308, 310. This evidence was not unduly prejudicial and the jury was properly instructed on the reasons for its admission and the legal limitations on its use. There is no plain error. Proposition One is denied.

Id. at 13-14.

"Federal habeas review is not available to correct state law evidentiary errors; rather it is limited to violations of constitutional rights." Smallwood v. Gibson, 191 F.3d 1257, 1275 (10th Cir. 1999). For a writ of habeas corpus to be granted based on a state law evidentiary error, there must be a "determination that the state law violation rendered the trial fundamentally unfair." James v. Gibson, 211 F.3d 543, 555 (10th Cir. 2000) (citing Boyd v. Ward, 179 F.3d 904, 916 (10th Cir. 1999)). A trial is rendered fundamentally unfair if it would be "shocking to the universal sense of justice." United States v. Russell, 411 U.S. 423, 432 (1973) (internal quotation marks omitted).

Oklahoma defines plain error as "an error which goes to the foundation of the case, or which takes from a defendant a right essential to his defense," Simpson v. State, 876 P.2d 690, 698 (Okla. Crim. App. 1994), and "impinges on the fundamental fairness of trial." Cleary v. State, 942 P.2d 736, 753 (Okla. Crim. App. 1997). Addressing Oklahoma's definition of plain error, the Tenth Circuit found that there was "no practical distinction between the formulations of plain error . . . and the federal due-process test, which requires reversal when error 'so infused the trial with unfairness as to deny due process of law.'" Thornburg v. Mullin, 422 F.3d 1113, 1125 (10th Cir. 2005) (quoting Estelle, 502 U.S. at 75). Therefore, when the OCCA applies the plain error standard of review, this Court must "defer to its ruling unless it 'unreasonably appli[ed]'" the test. Id. (citing 28 U.S.C. § 2254(d)).

8

Petitioner complains that the "*res gestae* evidence admitted at . . . trial became more about [Petitioner's] personal deficiencies than whether or not there was sufficient evidence to prove, beyond a reasonable doubt, that he killed [the victim]." Dkt. # 1 at 9. According to Petitioner, the testimony of the six witnesses--especially with regard to the stories Petitioner told to others about his personal history and wealth--went beyond what would be admissible as res gestae evidence because "[t]he evidence did not 'emerge incidentally' from the homicide, it was 'intentionally proven.'" Id. at 11. Petitioner asserts that much of the testimony amounted to emotional appeals and "character assassination," id. at 21, which was "highly prejudicial and minimally relevant." Id. at 18.

Respondent argues that the evidence was properly admitted at trial under state law to show motive and the victim's state of mind, and there was no "grossly prejudicial" error which would have "deprive[d] Petitioner of a fair trial [or] due process of law." Dkt. # 10 at 8.

Upon review of the record, the Court cannot conclude that the OCCA's ruling that admission of the testimony did not constitute plain error "was not merely wrong but unreasonable." Dockins v. Hines, 374 F.3d 935, 940 (10th Cir. 2004). Witnesses for the prosecution testified that Petitioner never expressed any animosity towards the victim, and the victim never expressed any animosity towards Petitioner. Dkt. # 11-4, Tr. Vol. IV at 748, 765; Dkt. # 11-5, Tr. Vol. V at 799-800. Viewed from the outside, Petitioner and Lori's marriage of over twenty years seemed to be a happy one, leaving open the question of Petitioner's motivation to murder his wife. Testimony from the six witnesses demonstrated that Petitioner's promises to family, friends, and coworkers were about to be exposed as lies. Although testimony from witnesses Colbert, Moon, and Merchant did create the impression that Lori was a successful and well-liked person, any emotional appeal, especially viewed in light of the strength of the prosecution's case, did not render the trial fundamentally

9

unfair. Applying the § 2254(d) deferential standard of review, the Court cannot say that the OCCA's decision with regard to this claim was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. Habeas corpus relief on Petitioner's claim challenging the admission of evidence at trial shall be denied.

2. **Ineffective assistance of trial counsel (Ground II)**

In Ground II, Petitioner claims that he received ineffective assistance of counsel. Before trial, Petitioner's counsel objected to the introduction of the "prior bad acts" and "state of mind" evidence referenced in Ground I by filing a motion in limine, and the trial court denied the motion. Dkt. # 1 at 34-35. At trial, counsel did not object contemporaneously when the evidence was presented. Id. at 35. Therefore, most of the errors related to the "prior bad acts" and "state of mind" hearsay evidence referenced in Ground I were not preserved for appeal. As a result, the OCCA reviewed Petitioner's claim that the evidence had been improperly admitted under the plain error standard. Dkt. # 10-3 at 12. Petitioner claimed on direct appeal that the failure to object at trial constituted ineffective assistance of counsel. Dkt. # 10-1 at 45-48.

In resolving the issue on appeal, the OCCA cited Strickland v. Washington, 466 U.S. 668 (1984), and found that Petitioner's claim of ineffective assistance of counsel was without merit. Dkt. # 10-3 at 16. The court found that:

> In each of the allegedly unreasonable omissions challenged here, Appellant has not shown deficient performance by counsel or unfair prejudice requiring relief. Because we found no plain error in the trial court's admission of evidence tending to show Appellant's other wrongs or bad acts and the victim's state of mind, Appellant cannot show that these alleged errors create any reasonable probability of a different outcome at trial. The challenged evidence met the general test of relevance, and its probative value was not substantially outweighed by the danger of unfair prejudice or other countervailing factors. 12 O.S.2001, §§ 2401-2403. Any objections to the evidence at trial would have been properly overruled. Again, Appellant cannot show prejudice under *Strickland.* Proposition Two is denied.

Id. at 15-16.

To be entitled to habeas corpus relief on his claim of ineffective assistance of trial counsel, Petitioner must demonstrate that the OCCA's adjudication of his claim was contrary to, or an unreasonable application of, Strickland. See 28 U.S.C. § 2254(d). Strickland sets out a two-pronged standard for review of ineffective assistance of counsel claims. A defendant must show that (1) his counsel's performance was deficient and that (2) the deficient performance was prejudicial. Strickland, 466 U.S. at 687. The first prong may be established by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Id. at 687-88. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.

To establish the second prong, a defendant must show that this deficient performance prejudiced the defense, to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see Sallahdin v. Gibson, 275 F.3d 1211, 1235 (10th Cir. 2002); Boyd, 179 F.3d at 914; Byrd v. Workman, 645 F.3d 1159, 1168 (10th Cir. 2011) (a petitioner must show counsel's errors rendered the results of the trial unreliable). "The likelihood of a different result must be substantial, not just conceivable." Richter, 562 U.S. at 112. This Court's review of the OCCA's decision on ineffective assistance of counsel claims is "doubly deferential." Cullen v. Pinholster, 563 U.S. 170, 131 S. Ct.

11

1388, 1403 (2011) (noting that a habeas court must take a "highly deferential" look at counsel's performance under Strickland and through the "deferential" lens of § 2254(d)).

Petitioner claims that counsel was ineffective for failing to object to the "prior bad acts" and "state of mind" hearsay evidence at trial. As set forth above, the OCCA held that Petitioner did not show either "deficient performance by counsel or unfair prejudice requiring relief." Dkt. # 10-3 at 15. Respondent argues that the OCCA's holding was not contrary to, or an unreasonable application of, federal law as established by Supreme Court precedent, nor was it an unreasonable determination of the facts in light of the evidence presented, and this Court should defer to the determination of the OCCA. Dkt. #10 at 8.

After reviewing the record, the Court concludes that Petitioner cannot show that the testimony would have been excluded had his counsel objected at trial. In addition, Petitioner fails to show that he was prejudiced by counsel's failure to object at trial to the introduction of the "prior bad acts" and "state of mind" evidence. The testimony of the six witnesses identified by Petitioner provided background establishing why Petitioner would be motivated to kill his wife of over twenty years. Dkt. # 11-5, Tr. Vol. V at 934. Petitioner's counsel also filed a pretrial motion in limine, objecting to the admission of the "prior bad acts" and "state of mind" evidence. The trial judge denied the motion. As a result, Petitioner has failed to show that trial counsel's performance in not objecting contemporaneously to the admission of the evidence fell below the standard of a reasonably competent attorney and has failed to show that there is a reasonable probability the evidence would not have been admitted had his counsel objected at trial. Petitioner has failed to demonstrate that the OCCA's adjudication of the claim raised in Ground II was contrary to, or an unreasonable application of, Strickland. Habeas corpus relief on Petitioner's claim of ineffective assistance of counsel shall be denied.

## C. Certificate of appealability

Rule 11, Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicate[s] which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (citation omitted).

After considering the record in this case, the Court concludes that a certificate of appealability should not issue. Nothing suggests that the Tenth Circuit would find that this Court's application of AEDPA standards to the decision by the OCCA was debatable amongst jurists of reason. See Dockins, 374 F.3d at 938. The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently. A certificate of appealability shall be denied.

## *CONCLUSION*

After careful review of the record, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States. Therefore, the petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED** that

1. The petition for writ of habeas corpus (Dkt. # 1) is **denied**.

2. A certificate of appealability is **denied**.

3. A separate judgment shall be entered in this matter.

**DATED** this 16th day of October, 2015.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE